UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

AMY PICKETT,

     Plaintiff,

v.

TEXAS TECH UNIVERSITY HEALTH
SCIENCES CENTER (TTUHSC), et al.,

     Defendants.

No. 5:20-CV-232-H-BQ

**ORDER ACCEPTING IN PART FINDINGS, CONCLUSIONS, AND
RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

This lawsuit arises out of Amy Pickett's dismissal from Texas Tech's Doctor of

Nursing Program (DNP) and Family Nurse Practitioner program (FNP).  Pickett sued

Texas Tech and two of its professors—Dr. Cherry and Dr. Evans—alleging violations of the

Rehabilitation Act, Title II of the ADA, and procedural and substantive due process under

42 U.S.C. § 1983.  United States Magistrate Judge D. Gordon Bryant made Findings,

Conclusions, and a Recommendation (FCR).  Judge Bryant recommended that the Court

grant in part defendant's motion to dismiss for failure to state a claim and for lack of

jurisdiction.  In particular, Judge Bryant recommended that the Court (1) dismiss Pickett's

failure-to-accommodate claims premised on Texas Tech's failure to extend Pickett's start

time of her October 2018 examination and to allow her to retake exams or substitute exam

grades and grant leave to amend those claims within the fourteen days allotted for

objections to the FCR; (2) dismiss Pickett's disability-harassment and Section 1983 claims

against Dr. Cherry and Dr. Evans in their individual capacities with prejudice; (3) dismiss

Pickett's Section 1983 claims for damages against Dr. Cherry and Dr. Evans in their official

capacities without prejudice; and (4) deny defendants' request to dismiss all other claims.

Defendants objected to the FCR's recommendations that (1) the Court not dismiss Pickett's Rehabilitation Act claims; (2) the Court find that sovereign immunity does not bar Pickett's claims under Title II of the ADA; and (3) that the Court not deny claims for damages against Dr. Cherry and Dr. Evans in their official capacities. Additionally, defendants objected to the FCR not addressing their request to dismiss Pickett's claims for injunctive relief under Section 1983 for violations of procedural and substantive due process. Finally, Pickett objected to the FCR's recommendation to dismiss her failure-to-accommodate claim.

The Court accepts Judge Bryant's FCR in part. First, the Court sustains, in part, the objection that Judge Bryant's FCR did not recommend dismissal of all claims for injunctive relief under Section 1983. Judge Bryant's FCR concluded that Pickett failed to state a Section 1983 claim for a violation of procedural due process, and because that portion of the FCR is unobjected to and the Court finds no plain error in that conclusion, the Court adopts it. Accordingly, the Court dismisses Pickett's Section 1983 procedural-due-process claim. In contrast, the Court declines to dismiss the Section 1983 claim for violation of substantive due process at this procedural stage because Pickett has sufficiently alleged that any substantive-due-process right she may have in higher education has been violated and defendants do not argue in their briefing that Pickett does not have such a right.

The Court overrules defendants' objections as to Judge Bryant's recommendation with respect to the Rehabilitation Act claims because Pickett has adequately alleged that Texas Tech's failure to accommodate and disability discrimination were the sole cause of her dismissal. The Court also overrules the objection that sovereign immunity bars the claims under Title II of the ADA because Pickett has sufficiently alleged a Title II violation,

and the Court declines to dismiss Pickett's Section 1983 claims for violations of substantive due process—which are based on the same conduct that Pickett alleges to support her Title II claims—at this procedural stage.  The Court also overrules the objection that the claims for damages against Dr. Cherry and Dr. Evans in their official capacities should be dismissed because (1) the state has waived sovereign immunity with respect to Pickett's Rehabilitation Act claims, and (2) the Court declines to find that sovereign immunity bars the claims under Title II of the ADA at this procedural stage.

In sum, the Court (1) dismisses Pickett's failure-to-accommodate claims premised on Texas Tech's failure to extend Pickett's start time of her October 2018 examination and to allow her to retake exams or substitute exam grades and grants leave to amend those claims in accordance with the FCR; (2) dismisses Pickett's disability-harassment and Section 1983 claims against Dr. Cherry and Dr. Evans in their individual capacities with prejudice; (3) dismisses Pickett's Section 1983 claims for damages against Dr. Cherry and Dr. Evans in their official capacities without prejudice; (4) dismisses Pickett's Section 1983 procedural-due-process claim for injunctive relief with prejudice; and (5) denies defendants' request to dismiss all other claims.

## 1.      Factual and Procedural Background

### A.      Factual Allegations[1]

Pickett enrolled in Texas Tech's DNP and FNP programs.  Dkt. No. 1 at 3–4.  Both programs were separate and distinct programs with differing coursework and academic requirements.  *Id.* at 4.

---

[1] These allegations are taken from the complaint, as they must be at this procedural stage. *Richardson v. Axion Logistics, L.L.C.*, 780 F.3d 304, 306 (5th Cir. 2015).

Pickett suffers from attention deficit hyperactivity disorder (ADHD), and, as a result, she requested accommodations. *Id.* Texas Tech issued a letter of accommodation (LOA) giving her three accommodations: (1) extended time on tests; (2) a quiet test environment; and (3) note-taking assistance accomplished through receiving from professors copies of powerpoint presentations or lecture notes. *Id.* at 4–5. Pickett alleges that during the fall 2017 semester, she did not experience difficulty receiving the accommodations to which she was entitled when she requested them. *Id.* at 5. Pickett performed well that semester and during the spring 2018 semester, receiving one A and her first B. *Id.*

However, during the summer 2018 semester, Pickett began encountering hostility after she presented her LOA to faculty in the DNP program. *Id.* First, Texas Tech questioned her clinical hours despite the fact that she was completing and reporting those hours. *Id.* at 6. Additionally, in violation of her LOA, Pickett's professors would not provide copies of lecture notes or powerpoints. *Id.* Dr. Crenshaw, Pickett's DNP advisor, also insisted that Pickett turn in assignments to her for review a week before they were normally due to be graded, and she refused to adjust those deadlines. *Id.* Moreover, Pickett began to be graded more harshly than other students and under different standards than other students. *Id.*

That summer, Pickett had a medical issue that required surgery and prevented her from working for some time. *Id.* As a result, Pickett took an incomplete in one of her courses—course 6201—and moved her due date for her primary paper to September 2018. *Id.* at 7. After her surgery, Texas Tech accused her of falsifying her clinical hours for one of her summer 2018 DNP courses and recommended that she be dismissed from the program.

*Id.* at 6–7.  However, at a hearing, Pickett was able to prove that she completed the clinical hours and was permitted to remain in the program.  *Id.* at 7.

In September 2018, Pickett submitted her paper for course 6201 approximately 30 hours late.  *Id.*  The syllabus in that class provided that a paper submitted one day later would have a one-letter-grade deduction added to the grade.  *Id.*  However, the professor for that course assigned her a zero due to the late submission, which resulted in Pickett failing the course.  *Id.*

Pickett appealed her failing grade and was informed that the highest grade she could receive on the assignment was a 79.  *Id.* at 7–8.  The professor regraded the assignment.  *Id.* at 8.  But she immediately assigned Pickett a zero because Pickett had not incorporated feedback from Dr. Cherry, the department chair, and Dr. Crenshaw, her advisor and course facilitator.  *Id.*  Pickett alleges this requirement was not applied to other students.  *Id.*

As a result, Pickett again protested her grade and asked for someone else to grade her assignment.  *Id.*  According to Pickett, Texas Tech policy requires that (1) a second faculty member, who is not the course facilitator, blind grade the paper, and (2) the course facilitator meet with the two evaluators and attempt to reconcile the grades.  *Id.*  However, in violation of this policy, Dr. Crenshaw graded the paper herself and determined that Pickett should receive a 59.  *Id.*  Texas Tech then averaged the two grades and assigned Pickett a final grade of 29.5 on the paper.  *Id.*  As a result, Pickett alleges that her grade was negatively impacted by the hostility of her first professor.  *Id.*  Ultimately, Pickett received a C in the course—a grade for which the DNP program did not award credit.  *Id.* at 9.

During the fall 2018 semester, Pickett provided her LOA to her professors.  *Id.* When getting ready to sit for an exam in one of her FNP courses taught by Dr. Thal, she

noticed that she had not been given extra time for the exam.  *Id.*  Pickett stepped out of the exam and contacted Dr. Thal and another professor for the course, who both knew that she was entitled to an accommodation of additional time.  *Id.*  The other professor responded and reset the start time for the test.  *Id.*  Pickett expressed that she needed more time to calm down, and she was granted an extra half-hour delay of her exam start time.  *Id.* at 10.  Pickett alleges that she began the exam with high anxiety.  *Id.*  However, Pickett admits that she did not request additional accommodations and says that she did not do so in light of a voicemail from the other professor.  *Id.*  Pickett received a 62 on that exam.  *Id.*

Pickett later sought permission to retake that exam.  *Id.*  And when that request was denied, she requested that her comprehensive exam grade replace her 62.  *Id.*  However, that request was also denied.  *Id.*  Pickett alleges that in that FNP course, she suffered migraines during her second exam and had severe panic attacks during her third and comprehensive exams.  *Id.* at 10–11.

Pickett also alleges that in fall 2018, her professors again failed to provide her with the class lectures or powerpoints that she was entitled to under her LOA.  *Id.*  As a result, Pickett received poor grades that were nowhere near an accurate reflection of her knowledge and skill.  *Id.* at 11.

Subsequently, in December 2018, Pickett received a letter from Dr. Evans informing her that she was being dismissed from the DNP program.  *Id.*  The letter detailed the circumstances where dismissal will result and explained that Pickett failed to meet one of those standards.  *Id.*  However, in Pickett's view, she did not qualify for dismissal under any of the stated criteria.  *Id.* at 12.

Pickett appealed her dismissal. *Id.* However, during the pendency of the appeal, Pickett's email was turned off and her advising appointments were cancelled in violation of Texas Tech policy. *Id.* Additionally, Dr. Cherry, the department chair reached out to her and informed her that she could remain in either the DNP program or the FNP program, but not both. *Id.* However, Pickett alleges that her enrollment in the FNP program should not have been in question. *Id.* at 12–13.

While Pickett was responding to Dr. Cherry's ultimatum to request additional time to make the decision, Dr. Cherry emailed her stating that because she did not respond, Texas Tech's dismissal would stand, and she was dismissed from both the DNP and FNP courses. *Id.* at 12–15.

### B.    Procedural History

Pickett's lawsuit alleges (1) claims under the Rehabilitation Act and Title II of the ADA against Texas Tech and Dr. Evans and Dr. Cherry in their official capacities; and (2) claims under Section 1983 for violations of Fourteenth Amendment procedural due process and substantive due process against Dr. Evans and Dr. Cherry in their individual and official capacities. Dkt. No. 1. Defendants then moved to dismiss the suit for failure to state a claim and for lack of jurisdiction. Dkt. No. 11. Judge Bryant recommended that the Court: (1) deny the motion to dismiss as to Pickett's Rehabilitation Act and ADA claims for disability discrimination and for failure to accommodate on the basis of denial of extra time to submit assignments for feedback and failure to provide lecture notes; (2) dismiss Pickett's Rehabilitation Act and ADA claims for failure to accommodate on the basis of the start time of her October 2018 exam and the denial of her requests to retake exams or substitute grades and grant leave to amend those claims within the fourteen days allotted for

7

objections to the FCR; (3) dismiss with prejudice the disability harassment claim and Section 1983 claims against Dr. Cherry and Dr. Evans in their individual capacities; and (4) dismiss without prejudice Pickett's Section 1983 claims for monetary damages against Dr. Cherry and Dr. Evans in their official capacities.  Dkt. No. 28 at 42–43.

Defendants timely objected to the FCR.  Dkt. No. 29.  Defendants object that (1) Pickett has not plausibly alleged a failure-to-accommodate or disability-discrimination claim under the Rehabilitation Act because her pleadings do not meet the sole-causation standard; (2) the Court does not have subject-matter jurisdiction over Pickett's claims under Title II of the ADA because sovereign immunity bars those claims; (3) Pickett has failed to state claims for injunctive relief under Section 1983 on the basis of violations of procedural due process and substantive due process; and (4) Pickett cannot state a claim for damages against Dr. Evans and Dr. Cherry under *Ex Parte Young*.  *Id.*  Pickett filed an objection to the FCR, which the Court construes to object to Judge Bryant's finding that she failed to state a failure-to-accommodate claim on the basis that she did not receive a further delay of the start time of her October 2018 exam.  Dkt. No. 30.

## 2.    Standards of Review

"Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations[]" of a magistrate judge.  Fed. R. Civ. P. 72(b)(2); *see* 28 U.S.C. § 636(b)(1).  "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1).  In contrast, the district judge reviews any unobjected-to proposed findings,

conclusions, and recommendations for plain error.  *Portwood v. Schneider & McKinney P.C.*, No. 3:20-CV-03344-X, 2020 WL 7056302, at *1 (N.D. Tex. Dec. 2, 2020).

**3.     Analysis**

**A.     The Court overrules defendants' objection to Judge Bryant's conclusion that Pickett's pleadings with respect to her failure-to-accommodate claims under the Rehabilitation Act satisfy the sole-causation standard.**

Defendants object to Judge Bryant's recommendation that Pickett has stated a failure-to-accommodate claim under the Rehabilitation Act, asserting that (1) Pickett did not plead that defendants' failure to accommodate her was the sole cause of her dismissal, and (2) the FCR takes an overly specific approach by examining each discrete request for accommodation.  The Court disagrees.

With respect to defendants' first basis for this objection, the Court finds that Pickett has adequately pled that the failure to accommodate her disability was the sole cause of her dismissal.  To prevail on a Rehabilitation Act claim, a plaintiff must show that "discrimination took place 'solely because of' [a] disability."  *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 505 (5th Cir. 2002).  However, "[i]f [an] accommodation is required[, a party is] liable by simply denying it."  *Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 455 (5th Cir. 2005).

First, in their objection, defendants overlook Judge Bryant's reliance on *Bennett-Nelson*.  Here, Pickett alleges that she was entitled to accommodations and that those accommodations were denied.  Dkt. No. 1 at 6, 10–11.  Thus, like Judge Bryant, the Court concludes that under *Bennett-Nelson*, Pickett has sufficiently pled that defendants' failure to accommodate her was the sole cause of her dismissal.

Additionally, defendants argue that Pickett has failed to meet the sole-causation element of her failure-to-accommodate claim because she concedes that she turned in her paper in her 6201 course late.  Dkt. No. 29 at 10.  However, defendants overlook Pickett's allegation that she turned in her paper late because she was required to balance the demands of her fall 2018 courses, for which she alleges she did not receive the accommodations to which she was entitled in her LOA, on top of completing her paper and dealing with technical difficulties.  Dkt. No. 29 at 7, 10–11.  Thus, viewing Pickett's allegations in the light most favorable to her—as it must at this procedural stage[2]—the Court finds that she has sufficiently alleged that defendants' failure to accommodate her by providing the accommodations listed in her LOA was the sole cause for the late submission of her paper. Accordingly, the Court rejects defendants' argument that Judge Bryant erroneously concluded that Pickett sufficiently alleged the sole-causation element of her failure-to-accommodate claim under the Rehabilitation Act.

Next, defendants argue that Judge Bryant's review of each specific request for accommodation under a failure-to-accommodate theory, as opposed to using a holistic approach to analyze the failure-to-accommodate issue, is inconsistent with the sole-causation requirement.  Dkt. No. 29 at 10–11.  And defendants argue that, when looking at the accommodations provided to Pickett as a whole, they provided reasonable accommodations because they provided more accommodations than Pickett requested, including additional time and a late start time for one of her examinations.  *Id.*

But even utilizing a holistic approach with respect to the failure-to-accommodate issue and considering these accommodations as defendants request, the Court still finds that

---

[2] The Court views the facts in the light most favorable to the plaintiff.  *Richardson*, 780 F.3d at 306.

Pickett has sufficiently alleged a failure-to-accommodate claim.  In fact, in their objection, defendants overlook Pickett's allegation that defendants determined that she was entitled to copies of lecture notes and powerpoints but failed to provide those materials—and that they failed to revise the requirement that she turn in her assignments to Dr. Crenshaw one week before they were due for review.  *Id.* at 6–7, 10–11.  And the accommodations of extra time on exams and a late start time do not address the same needs that would be addressed by copies of notes and powerpoints and lengthened homework due dates.  Finally, as Judge Bryant noted in his FCR, Pickett alleges that defendants' failures to accommodate her disability by providing notes and powerpoints and extending homework due dates caused her to receive poor grades.  Dkt. No. 28 at 18–19; *see* Dkt. No. 1 at 10–11.  Because the Court finds that Pickett has sufficiently stated a failure-to-accommodate claim, even when it analyzes that claim holistically, it rejects defendants' argument that the claim should be dismissed on that basis.

Because the Court rejects each of defendant's arguments that Judge Bryant incorrectly concluded that Pickett's failure-to-accommodate claim under the Rehabilitation Act should not be dismissed, it overrules their objection to the FCR on that basis.

### B. The Court overrules defendants' objection to Judge Bryant's conclusion that Pickett's pleadings of her disability-discrimination claims under the Rehabilitation Act satisfy the sole-causation standard.

To state a disability-discrimination claim under the Rehabilitation Act, Pickett must allege that the discrimination alleged—in this case her dismissal from the DNP and FNP programs—"took place 'solely because of' [her] disability."  *Soledad*, 304 F.3d at 505.  Defendants argue that Pickett alleges that her dismissal was caused not only by disability discrimination but also by (1) their refusal to allow her to retake an exam or have that exam

11

regraded; (2) her late submission of a paper in her 6201 course; and (3) their false accusation regarding her failure to complete clinical hours. Dkt. No. 29 at 12. However, none of these events are independent occurrences that caused Pickett's dismissal as defendants allege.

That defendants refused to allow Pickett to retake an exam or have that exam regraded, and that Pickett turned in her paper late, are beside the point. Regardless of whether these events caused Pickett to get a low grade in any of her classes, Pickett still alleges that she was dismissed despite not meeting the criteria for dismissal. Dkt. No. 1 at 11–13. Thus, Pickett has not alleged that defendants' refusal to accommodate her on an exam or her failure to submit a paper on time are events independent from disability discrimination that caused her dismissal.

Additionally, the allegation that defendants falsely accused Pickett of failing to complete her clinical hours is a factual allegation supporting the disability-discrimination claim. First, Pickett does not allege that she was dismissed because she failed to complete her clinical hours. To the contrary, Pickett alleges that she appealed the accusation that she failed to complete her clinical hours, proved that she completed her hours, and was permitted to stay in her DNP program. Dkt. No. 1 at 7. And the fact that, as alleged, this accusation arose after she disclosed her disability supports her allegation that the adverse events that she suffered after disclosing her disability—including this event and ultimately her dismissal—were due to disability discrimination on behalf of the defendants. Thus, the Court rejects defendants' argument that their false accusation that Pickett failed to complete her clinical hours was an independent cause of Pickett's dismissal other than disability discrimination.

Because defendants have failed to point to any alleged cause of Pickett's dismissal other than disability discrimination, the Court overrules their objection.

### C.   The Court overrules defendants' objection to Judge Bryant's conclusion that the Court has subject-matter jurisdiction over Pickett's Title II claims against Texas Tech.

Defendants argue that binding precedent dictates that Title II of the ADA is not a valid abrogation of sovereign immunity. Dkt. No. 29 at 13–14. Congress may abrogate a state's Eleventh Amendment immunity. *Tennessee v. Lane*, 541 U.S. 509, 517 (2004). To do so, Congress must "unequivocally express[] its intent to abrogate that immunity" and "act[] pursuant to a valid grant of constitutional authority." *Id.* With respect to claims under Title II of the ADA, Congress has "expressly declared that states shall not be immune from suit." *Block v. Tex. Bd. of Law Examiners*, 952 F.3d 613, 617 (5th Cir. 2020). Defendants do not challenge that this is the case. *See* Dkt. No. 29 at 12–13. Instead, defendants object that Congress did not act pursuant to a valid grant of constitutional authority. *Id.* at 12–15.

"Congress can abrogate a State's sovereign immunity when it does so pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment to enforce the substantive guarantees of that Amendment." *Lane*, 541 U.S. at 518. This enforcement power includes authority to remedy and deter "violation of rights guaranteed [by the Fourteenth Amendment] by prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text." *Id.* (quoting *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 81 (2000)). Thus, "Congress may enact so-called prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter unconstitutional conduct." *Id.* (quoting *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 727–28 (2003)). Accordingly, Title II validly abrogates sovereign immunity with respect to

13

conduct that violates Title II and the Fourteenth Amendment.  *See United States v. Georgia*, 546 U.S. 151, 159 (2006).

Here, as discussed in detail in Section 3(D)(ii) of this order, the Court declines to dismiss Pickett's substantive-due-process claims under the Fourteenth Amendment—which are based on the same conduct as her Title II claims—at this time.  Accordingly, the Court also declines to find that Pickett has failed to allege that the alleged violations of Title II were not also violations of the Fourteenth Amendment.  Thus, at this time, the Court finds that under *Georgia*, sovereign immunity has been abrogated to the extent that Pickett states a claim under Title II.[3]

Defendants argue that binding precedent mandates dismissal of the Title II claim for lack of subject-matter jurisdiction.  Dkt. No. 29 at 13.  To support this argument, they cite *Reickenbacker v. Foster*, 274 F.3d 974 (5th Cir. 2001).  In *Reickenbacker*, the Fifth Circuit addressed the issue of whether Title II of the ADA is a valid abrogation of sovereign immunity and held that Congress did not validly abrogate state sovereign immunity when it passed Title II.  *Id.* at 983–84.  However, the Supreme Court issued its decision in *Georgia* after *Reickenbacker*.

"Under [the Fifth Circuit's] rule of orderliness, only an intervening change in the law (such as by a Supreme Court case) permits a subsequent panel [or a district court] to decline to follow a prior Fifth Circuit precedent."  *United States v. Alcantar*, 733 F.3d 143, 145 (5th Cir. 2013).  "Such an intervening change in the law must be unequivocal, not a mere 'hint'

---

[3] If, later in the case, defendants argue that Pickett's substantive-due-process claims under the Fourteenth Amendment fail and the Court adopts that reasoning, its conclusion as to whether Title II validly waives sovereign immunity in this case may change.  However, the Court need not reach this issue at this time.

of how the Court might rule in the future." *Id.* at 146.  A mere prediction regarding possible future Supreme Court rulings, without an unequivocal overruling of Fifth Circuit precedent, is not an intervening change in the law.  *See United States v. Guerrero*, 768 F.3d 351, 361 (5th Cir. 2014).  However, where a Fifth Circuit precedent is clearly inconsistent with a subsequent Supreme Court case, the Fifth Circuit precedent is not controlling precedent, at least where it is inconsistent with the Supreme Court case, even if it is not explicitly overruled.  *See In re Frazin*, 732 F.3d 313, 319 (5th Cir. 2013).

Where a violation of Title II is also a violation of the Fourteenth Amendment, *Georgia* dictates that Title II validly waives sovereign immunity.  *Georgia*, 546 U.S. at 159. Accordingly, given that the Court has declined to dismiss Pickett's substantive-due-process claims at this time, the Court overrules defendants' objection that sovereign immunity applies.

Defendants also argue that they have sovereign immunity because Pickett fails to state a claim under Title II.  Dkt. No. 29 at 14–15.  First, defendants argue that with respect to the failure-to-accommodate claim, on a 12(b)(1) motion to dismiss, the Court can properly consider evidence attached to the motion, and Pickett's LOA did not include accommodations for note-taking assistance.  *Id.* at 15.  But the record undermines the latter assertion.  *See* Dkt. No. 29-1 at 6.  The LOA included specifically the accommodation of "[n]ote-taking assistance, i.e. instructors may give copies of classroom lecture notes, power point presentation[s], transparencies, overheads used for daily lectures or post notes online." *Id.*  Defendants also assert that the only accommodation that Pickett requested was extra time on exams.  Dkt. No. 29 at 15.  However, this argument disregards Pickett's allegations that she disclosed her disability to Dr. Crenshaw and requested to have her submission

15

deadlines extended.  Dkt. No. 1 at 6.  And the documentary evidence to which defendants

cite does not negate this allegation.  *See* Dkt. No. 29-1 at 4.  Thus, even considering the

attachments to defendants' motion, the Court declines to find that Pickett has failed to state

a failure-to-accommodate claim under Title II.

Next, Defendants argue that Pickett has failed to state a disability-discrimination

claim under Title II because she submitted a paper late and does not allege whether a

requirement applied during regrading of her late-submitted paper was not applied to other

non-disabled students.  Dkt. No. 29 at 15.  However, defendants' argument disregards

Pickett's other allegations of disability discrimination noted by Judge Bryant in his FCR,

which are sufficient to survive dismissal.  Dkt. No. 28 at 20.  Thus, for the reasons stated in

Judge Bryant's FCR, the Court declines to find that Pickett has failed to state a disability-

discrimination claim under Title II.  *Id.* at 19–21.

**D.    The Court sustains in part defendants' objection that Pickett's Section 1983 claims for injunctive relief against Dr. Evans and Dr. Cherry should be dismissed.**

Defendants argue that Judge Bryant's FCR did not address their arguments that

Pickett's complaint failed to state claims for injunctive relief on the basis of her alleged

Section 1983 violations for denial of procedural and substantive due process.  Dkt. No. 29 at

18.  As a result, defendants request the Court to dismiss Pickett's procedural and substantive

due process claims for injunctive relief.  *Id.*  Pickett did not file a response to defendants'

objection.

Having reviewed the objection, the Court finds that Pickett has failed to state a claim

for injunctive relief with respect to her procedural-due-process claim and dismisses that

claim.  However, considering Pickett's allegations in her complaint, the Court rejects

defendants' objection that Pickett has failed to state a substantive-due process claim on the basis that her dismissal was not a substantial departure from academic norms.  And because defendants have not argued that Pickett's substantive-due process claim should be dismissed on the basis that a substantive-due-process right to a higher education does not exist, the Court declines to dismiss the claim on that basis at this time.

### i.   The Court finds that Pickett has failed to state a procedural-due-process claim.

In his FCR, Judge Bryant concluded that Pickett "has not stated a cognizable procedural due process claim."  Dkt. No. 28 at 37.  No party objects to this conclusion.  *See* Dkt. Nos. 29, 30.  Thus, for the reasons stated in Judge Bryant's FCR, the Court finds that Pickett has failed to state a procedural-due-process claim.

### ii.   The Court finds that Pickett has not failed to state a substantive-due-process claim on the basis that her dismissal was not a substantial departure from academic norms.

Defendants argue that Pickett has failed to state a substantive-due-process claim against Dr. Evans and Dr. Cherry on the basis that her dismissal was not a substantial departure from academic norms.  Dkt. No. 29 at 20–21.  However, Pickett's allegations indicate otherwise.  The Supreme Court has recognized the Due Process Clause of the Fourteenth Amendment to the United States Constitution "to guarante[e] more than fair process, and to cover a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them."  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (internal quotation marks omitted).  However, "because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended," courts should be "reluctant to expand the concept of substantive due process." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).

"The law regarding substantive due process rights in the context of higher education, however, is far from settled." *Shah v. Univ. of Tex. Sw. Med. Sch.*, 54 F. Supp. 3d 681, 696 (N.D. Tex. 2014). Two times, the Supreme Court has "avoided deciding whether students at a public university have a substantive due process right to continued education." *Id.* In both of those cases, the Supreme Court assumed that such a right existed and concluded that the alleged conduct did not violate any substantive-due-process rights. *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 223 (1985) ("[E]ven if Ewing's assumed property interest gave rise to a substantive right under the Due Process Clause to continued enrollment free from arbitrary state action, the facts of record disclose no such action."); *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 91–92 (1978) ("Even assuming that the courts can review under such a standard an academic decision of a public educational institution, we agree with the District Court that no showing of arbitrariness or capriciousness has been made in this case.").

Even though the Supreme Court has not decided whether students at a public university have a due-process right to continued education, it has clarified that even if that right existed, courts cannot override a decision of a school administrator unless "it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Ewing*, 474 U.S. at 225. Thus, the Fifth Circuit has held that "[c]ourts must accept, as consistent with due process, 'an academic decision that is not beyond the pale of reasoned academic decision-making when viewed against the background of [the student's] entire career at the University.'" *Wheeler v. Miller*, 168 F.3d 241, 250 (5th Cir. 1999) (quoting *Ewing*, 474 U.S. at 227–28).

18

Here, Pickett's allegations, which the Court must take as true at this procedural stage, indicate that Dr. Evans's and Dr. Cherry's choices to dismiss her from the DNP and FNP programs were a substantial departure from academic norms.  With respect to Dr. Evans's decision to dismiss her from the DNP program, Pickett alleges that Dr. Evans sent her a letter regarding his decision to dismiss her.  Dkt. No. 1 at 11.  Pickett alleges that in that letter, Dr. Evans listed the criteria for dismissal and that she was being dismissed because she failed to meet one or more of the standards outlined in those criteria.  *Id.* However, Pickett also alleges that she did not qualify for dismissal under any of the stated criteria.  *Id.* at 12.  Additionally, Pickett does not allege that—and defendants do not point to any Texas Tech program regulations providing that—Dr. Evans had any discretion to dismiss her from the DNP program if she did not meet the stated criteria for dismissal. Taking Pickett's allegations as true, the Court declines to find that she has failed to sufficiently allege that Dr. Evans's dismissal of her despite the fact that she did not meet the criteria for dismissal was not a substantial departure from academic norms.

Similarly, Pickett alleges that Dr. Cherry gave her an ultimatum to choose to remain in either the DNP or FNP program, but not both, despite the fact that (1) she did not meet the criteria for dismissal from the DNP program; (2) her FNP enrollment should not have been in question; and (3) her dismissal letter from Dr. Evans did not indicate that she was being dismissed from the FNP program.  *Id.* at 12–13.  Additionally, Pickett does not allege that—and defendants do not point to any Texas Tech program regulations providing that— Pickett's possible dismissal from the DNP program could also affect her enrollment in the FNP program.  Taking Pickett's allegations as true, the Court declines to find that she has

failed to sufficiently allege that Dr. Cherry's dismissal of her from the DNP and FNP programs was not a substantial departure from academic norms.

Given the above facts and authorities, and viewing plaintiff's allegations through the deferential lens applicable at this stage, the Court declines to dismiss her substantive-due-process claim for injunctive relief on that basis.[4]

### E.   The Court overrules defendants' objection to Judge Bryant's conclusion that Pickett may pursue her claims for damages against Dr. Evans and Dr. Cherry in their official capacities.

"Unless a state waives its immunity or Congress overrides that immunity, the Eleventh Amendment bars an action for damages in federal court against a state or its officials sued in their official capacities." *Shisinday v. Johnson*, 234 F.3d 28 (5th Cir. 2000). Here, the Court finds that Pickett has sufficiently alleged claims under the Rehabilitation Act and that the state has waived sovereign immunity with respect to such claims.[5] Additionally, at this procedural stage, the Court declines to find that Congress has failed to validly waive sovereign immunity with respect to Pickett's claims under Title II of the ADA. Thus, Pickett's Rehabilitation Act claims and, at this procedural stage, her claims under Title II of the ADA fall in the category of claims where sovereign immunity is waived

---

[4] Again, the Court acknowledges that "[t]he law regarding substantive due process rights in the context of higher education[] . . . is far from settled," *Shah*, 54 F. Supp. 3d at 695, and that it should be "reluctant to expand the concept of substantive due process," *Collins*, 503 U.S. at 125. However, defendants do not argue that Pickett's substantive-due-process claims should be dismissed on the basis that she does not have a substantive-due-process right to higher education. *See* Dkt. No. 29 at 20–24. Thus, the Court declines to reach this issue at this time. But the fact that the Court declines to consider this issue does not prevent defendants from raising it at a later time should they desire to do so.

[5] Defendants do not object to Judge Bryant's conclusion that the state has waived sovereign immunity with respect to Rehabilitation Act claims. *See* Dkt. No. 29.

or overridden by Congress.  Accordingly, the Court overrules defendant's objection to Judge Bryant's conclusion that Pickett's damages claims against Dr. Evans and Dr. Cherry in their official capacities under the Rehabilitation Act and Title II of the ADA should not be dismissed.[6]

### F.    The Court overrules Pickett's objection that her failure-to-accommodate claim with respect to her October 2, 2018 exam should not be dismissed.

Pickett filed an objection that only reiterates the allegations from her complaint that, after her fall 2018 exam where she was erroneously not given extra time, she did not request another postponement of the exam because she received a voicemail stating that no more changes should be made and felt like she could not ask for another postponement.  Dkt. No. 30.  The Court construes this statement as an objection to Judge Bryant's conclusion that Pickett cannot base her failure-to-accommodate claims on defendants' decision not to further postpone her exam because she did not request another postponement.  Dkt. No. 28 at 16.  For the reasons stated in Judge Bryant's FCR, the Court overrules the objection.

### G.    The Court finds no plain error in the unobjected-to portions of Judge Bryant's FCR.

The Court has examined the record and reviewed the unobjected-to portions of the FCR for plain error.  Finding no plain error, the Court accepts and adopts these portions of the FCR.

## 4.    Leave to Amend

Judge Bryant recommended that the Court dismiss Pickett's Section 1983 claims against Dr. Cherry and Dr. Evans in their individual capacities and her claims for disability

---

[6] Judge Bryant recommended dismissal of Pickett's Section 1983 claims for monetary damages against Dr. Evans and Dr. Cherry in their official capacities.  Dkt. No. 28 at 42.  Neither defendants nor Pickett have objected to that conclusion.  The Court adopts that recommendation.

harassment with prejudice.  Dkt. No. 28 at 41–42.  Additionally, Judge Bryant recommended that the Court dismiss Pickett's Section 1983 damages claims against Dr. Cherry and Dr. Evans in their official capacities without prejudice.  *Id.* at 42.  Finally, Judge Bryant recommended that the Court grant leave to amend her Rehabilitation Act and ADA claims for failure to accommodate with respect to only her fall 2018 examination and her requests to retake exams and substitute exam grades.  *Id.*  The parties have not objected to these recommendations.  *See* Dkt. Nos. 29, 30.  Thus, in accordance with Judge Bryant's recommendation, the Court grants Pickett leave to amend only her failure-to-accommodate claims with respect to her fall 2018 examination and her requests to retake exams and substitute exam grades.  Judge Bryant specified that Pickett's amended complaint must be filed "within the fourteen days allotted for objections to" the FCR.  Dkt. No. 28 at 43.  It does not appear that Pickett filed her Motion for Leave to File Amended Complaint within that deadline.  Dkt. No. 32.  However, this Court does not resolve Pickett's Motion for Leave to File Amended Complaint.[7]

Additionally, the Court sustains defendants' objection that Pickett has failed to state a Section 1983 claim for injunctive relief based on violations of procedural process and denies leave to amend that claim.  "[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."  *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).  In this case, Judge Bryant found that

---

[7] Pursuant to the automatic referral of this case to Judge Bryant for pretrial management under Special Order 3-251, that motion is referred to Judge Bryant for resolution.

Pickett has failed to demonstrate that she possesses a property interest in her continued enrollment and that, as a result, she has not stated a cognizable procedural due process claim.  Dkt. No. 28 at 37.  The Court has adopted this finding, which was uncontested. Accordingly, the Court finds that even if Pickett had leave to amend her Section 1983 procedural-due-process claim, she could not remedy this deficiency.  Thus, the Court denies Pickett leave to amend this claim and dismisses the claim with prejudice.

**5.    Conclusion**

Defendant and plaintiff filed objections to Judge Bryant's FCR.  Dkt. Nos. 29–31. Defendants objected to the FCR's recommendations that (1) the Court not dismiss Pickett's Rehabilitation Act claims; (2) the Court find that sovereign immunity does not bar Pickett's claims under Title II of the ADA; and (3) that the Court not deny claims for damages against Dr. Cherry and Dr. Evans in their official capacities.  Additionally, defendants objected to the FCR not addressing their request to dismiss Pickett's claims for injunctive relief under Section 1983 for violations of procedural and substantive due process.  Finally, Pickett objected to the FCR's recommendation that her failure-to-accommodate claim premised on Texas Tech's failure to push back the start date of her October 2018 exam be dismissed.

For the reasons stated in this order, the Court overrules defendants' objections with respect to the Rehabilitation Act claims, claims under Title II of the ADA, and claims for damages against Dr. Cherry and Dr. Evans in their official capacities.  The Court also overrules Pickett's objection.  Finally, the Court sustains in part defendants' objection with respect to the Section 1983 claims for injunctive relief, finds that Pickett has failed to state a procedural-due-process claim, and declines to dismiss Pickett's substantive-due-process

23

claim at this procedural stage.  Finally, the Court finds no plain error in the unobjected-to portions of Judge Bryant's FCR.

Therefore, the Court accepts in part the findings, conclusions, and recommendation of the United States Magistrate Judge.  The Court (1) dismisses Pickett's failure-to-accommodate claims premised on Texas Tech's failure to extend Pickett's start time of her October 2018 examination and to allow her to retake exams or substitute exam grades and grants leave to amend those claims in accordance with the FCR; (2) dismisses Pickett's disability-harassment and Section 1983 claims against Dr. Cherry and Dr. Evans in their individual capacities with prejudice; (3) dismisses Pickett's Section 1983 claims for damages against Dr. Cherry and Dr. Evans in their official capacities without prejudice; (4) dismisses Pickett's Section 1983 procedural-due-process claim for injunctive relief; and (5) denies defendants' request to dismiss all other claims.

So ordered on September 23, 2021.

James Wesley Hendrix
United States District Judge

24